IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MICHAEL JAMES DRAKE STEWART,

    Petitioner,

v.                                  CASE NO. 3:17-cv-542-RV-GRJ

SECRETARY, FLORIDA DEP'T
OF CORRECTIONS,

    Respondent.

_____/

## **REPORT AND RECOMMENDATION**

This case is before the Court on the Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254.  ECF No. 1.  The Petition stems from Petitioner's Escambia County conviction for attempted voluntary manslaughter, for which he is serving a 15-year term of imprisonment.  *Id.* Respondent has filed a response and appendix with relevant portions of the state-court record, and Petitioner has filed a reply.  ECF Nos. 18, 20. Upon due consideration of the Petition, the response, the reply, and the state-court record, the undersigned recommends that the Petition be denied.[1]

---

[1] The Court has determined that an evidentiary hearing is not warranted because the Court may resolve the Petition on the basis of the record. *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

## I. **State-Court Proceedings**

Petitioner was charged with attempted first-degree premeditated murder with a weapon following an altercation in which both Petitioner and his wife suffered serious knife wounds.  The trial court denied Petitioner's motion to suppress incriminating statements that he made to law enforcement officers while he was hospitalized for his injuries prior to his arrest.  ECF No. 18-1 at 188-90.  Following a jury trial, Petitioner was found guilty of the lesser included offense of attempted voluntary manslaughter with a finding that he carried or used a weapon during the offense.  *Id.* at 211-12.  The First DCA affirmed Petitioner's conviction *per curiam,* without discussion of his claim that the trial court reversibly erred in denying his motion to suppress.  ECF No. 18-10 at 7-8. The Florida Supreme Court denied discretionary review.  *Stewart v. State,* 145 So. 3d 828 (Fla. 2014).  The United States Supreme Court denied certiorari.  *Stewart v. Florida,* 135 S.Ct. 682 (2014).

Petitioner then pursued state postconviction remedies alleging ineffective assistance of trial counsel.  ECF No. 18-10 at 247-89 (second amended Rule 3.850 motion).  Following an evidentiary hearing, the state court denied relief.  ECF No. 18-10 at 329 to 18-11 at 15.  The First DCA affirmed, *per curiam,* without written opinion.  ECF No. 18-12 at 95.

Petitioner filed a state habeas corpus petition alleging ineffective assistance of appellate counsel. ECF No. 18-12 at 107-26. The First DCA denied the petition on the merits without written opinion. *Id.* at 156. Petitioner filed a second state habeas petition alleging "manifest injustice". *Id.* at 158-68. The First DCA dismissed the petition as unauthorized. *Id.* at 170.

The substance of Petitioner's postconviction proceedings is not pertinent to Petitioner's federal habeas petition, which concerns only the trial court's denial of his motion to suppress. *See* ECF No. 1. As his sole claim for federal relief, Petitioner contends that the trial court's denial of the motion to suppress violated his right against self-incrimination and his right to due process. ECF No. 1 at 4.

## II. Section 2254 Standard of Review

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing

evidence." "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt v. Titlow,* ___ U.S. ___, 134 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1); *see Burt*, 134 S.Ct. at 15 (standard for reviewing claims of legal error by state courts is "highly deferential"). This standard "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Id*.

In view of the deference afforded to the state courts' adjudication of constitutional claims, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Id*. at 15-16 (quoting *Harrington v. Richter*, 562 U.S. ___, 131 S.Ct. 770, 786–787 (2011). "'If this standard is difficult to meet'—and it is—'that is

because it was meant to be.'" *Id*. at 16 (quoting *Harrington*, 131 S.Ct. at 786). "We will not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Id*. (quoting *Harrington*, 131 S.Ct. at 786).

### III. <u>Discussion</u>

### *Ground One: Whether the trial court violated Petitioner's constitutional rights by denying his motion to suppress*

Petitioner's motion to suppress sought to exclude statements he made to police officers while he was in the hospital. Petitioner was not advised of his *Miranda* rights, but more importantly (according to Petitioner) he was under the influence of morphine and sedatives just 24 hours after open-heart surgery to treat his wounds. Petitioner alleges that he was physically restrained in his hospital bed in the ICU by arm restraints, and that he was incoherent during the interrogation. Petitioner asserts that he was "in custody" at the time because police officers were stationed outside his room to insure that he could not leave. Petitioner argues that as a result of the narcotic and sedative intoxication, loss of blood, and the physical trauma from surgery, his mental and physical condition rendered him incapable of making intelligent decisions regarding any waiver of his constitutional rights. ECF No. 1 at 4.

At the suppression hearing, Pensacola Police Department (PPD)

Officer Michael Cyr testified that he was dispatched to investigate a 911 call from a woman "whispering that she had been stabbed by her boyfriend and that he had stabbed himself." ECF No. 18-1 at 120. When Cyr arrived at the apartment, he and other officers forced the door open and entered. They smelled blood and feces, and found an injured woman lying in the doorway of a bedroom. The officers found Petitioner lying face down on a bed in the master bedroom. There was a knife about six inches from Petitioner's hand. The officers secured him in handcuffs. Emergency medical services arrived almost immediately after the police. Officer Cyr asked Petitioner what happened, and Petitioner stated that there was a note on the sink. The handcuffs were removed as soon as EMS began treating Petitioner. It appeared that Petitioner was bleeding from a neck wound. Officer Cyr was not able to speak to the female victim, and he did not see or hear any other evidence that would explain what happened. The officers on the scene "backed off" from Petitioner to let EMS treat him. While EMS had "physical custody" of Petitioner, law enforcement was "keeping track" of him. *Id.* at 120-27.

Two days later, Officer Cyr was outside of Petitioner's hospital room waiting for him to be released. Cyr testified that he was outside the room because Petitioner "was one of our prisoners of [PPD] and we were just standing post." *Id.* at 127. The officers did not have an arrest warrant. Cyr

affirmed that in his view Petitioner was in the custody of PPD pending release from the hospital. *Id.* at 128.

PPD Detective James Gore testified that he was assigned to investigate the stabbing on the morning of the crime. At that point, neither Petitioner nor the female victim were still in the apartment. Gore went to the hospital, but the victim was in surgery and Petitioner was in the trauma room and unable to speak. Gore did not instruct the hospital that either party was in the custody of the PPD and there was no officer stationed at the hospital at that time. *Id.* at 130-31.

Gore returned to the hospital the next day. He did not request that the hospital not release either party. The victim was still unconscious and hospital staff informed Gore that Petitioner was "alert and conscious and conversing with a nurse." A nurse indicated that Petitioner was in a condition to speak to Gore, and permitted Gore to enter the room and speak with him. *Id.* at 132-33, 139.

Gore and Officer Fortenberry obtained a recorded statement from Petitioner. *Id.* at 132-33. At that time, Gore was aware of an email that Petitioner had sent to his sons, his mother, and the victim's mother that "appeared to be a farewell note of sorts". *Id.* at 133. Gore had seen a message written in blood on the bathroom counter at the crime scene that said "she stabbed me first". Gore did not at that time have any other

evidence about who stabbed whom, and Petitioner was not under arrest. *Id.* at 133-34.

Gore asked Petitioner if he was willing to speak to him. The officers held a recording device close to Petitioner's face because he had a nasopharyngeal tube and it was difficult to understand him. Petitioner seemed uncomfortable but did not complain of pain. Gore testified that Petitioner was able to understand his questions and logically respond to them. Petitioner indicated that the victim had stabbed him and did not seem reluctant to speak. He was able to explain his side of the events. Petitioner thought he had killed the victim and was unaware that she was still alive until Gore informed him. *Id.* at 135-36.

Gore did not have further contact with Petitioner. No other police officer had contact with Petitioner until his arrest four days after the stabbing. Gore was not aware of officers standing guard at the hospital so that Petitioner could not leave. Detective Harnett arrested Petitioner at the hospital as he was being discharged. *Id.* at 136-37.

On cross-examination, Gore reiterated that officers were not posted by Petitioner's hospital room but were posted directly outside of the victim's room to ensure her safety. There were no officers posted to maintain Petitioner's security. Gore did not speak to Petitioner's physicians; the nurse told him that Petitioner was awake, talking, and moving around

slightly.  Gore did not inquire about Petitioner's medications.  He testified that Petitioner was free to leave the hospital if he had been physically capable of doing so.  Gore testified that Petitioner would have been able to leave because there was still "some debate about whether or not he was the primary aggressor in this case because of the note that was written in blood".  At that point, absent Petitioner's statement, Gore did not have probable cause to arrest Petitioner.  *Id.* at 139-41.

On re-direct, Gore testified that Petitioner's and the victim's hospital rooms were both in the adult critical care unit, two or three rooms apart.  Gore interviewed Petitioner on May 25 and he was not arrested until May 28.  In the intervening time, the PPD developed evidence that Petitioner was the aggressor in the stabbing, including messages that Petitioner sent to his family.  Between the interview on May 25 and the arrest on May 28, the officers were sorting out the competing facts regarding who was the aggressor.  *Id.* at 142-44.

The hearing was continued until other witnesses were available and Petitioner's medical records were produced.  At the continued hearing, Dr. Loretta Brestan, one of Petitioner's surgeons, testified regarding his medical condition.  Dr. Brestan testified that she performed surgery to treat lacerations on either side of Petitioner's neck and a penetrating wound to his abdomen.  A cardiothoracic surgeon was brought in to assess the

potential injury to Petitioner's heart.  Petitioner's chest was opened and it was determined that the bleeding had stopped, so chest tubes were placed and he was closed up.  *Id.* at 157-60.

Following surgery, Dr. Brestan prescribed up to two milligrams of morphine to be given every four or six hours, as needed, and Petitioner later received Percocet. She agreed that some memory loss or inability to recall is not uncommon following surgery due to the effects of anesthesia and pain medication.  The effects and duration are different for each person.  *Id.* at 161-66.

Dr. Brestan assumed care of Petitioner when he was post-op day three, after whatever interviews had occurred.  Petitioner was alert and oriented and answered questions appropriately.  Dr. Brestan agreed that it was possible that Petitioner was able to understand questions and answer logically and rationally on the day that Gore interviewed him.  *Id.* at 166-68.

Dr. Brestan described Petitioner's post-operative medication as "not ginormous" and as a "mild to moderate dose of pain medicine on an intubated patient to keep them comfortable while they're intubated." The records reflected that morphine had been administered every two hours, but such dosages were still within the standard of care.  *Id.* at 170.

The recording of Petitioner's interview by Gore was admitted as evidence at the suppression hearing and subsequently played for the jury

at trial. The trial transcript of the recording reflects that Gore explained to Petitioner that he was investigating the circumstances of how Petitioner and the victim sustained stab wounds, and Petitioner agreed to speak with him. ECF No. 18-9 at 123. In response to Gore's questions, Petitioner described the circumstances of the altercation. He and the victim argued because she admitted having an affair. Both had been drinking. Petitioner got a knife and stabbed the victim in the back as she was facing away from him. He told Gore that the victim had also stabbed him in the neck. He stabbed himself in the neck and torso and took pills belonging to the victim because he wanted to kill himself. He denied that he wanted to kill the victim and stated that he was just angry because of her affair. Petitioner affirmed to Gore that his statement was truthful. *Id.* at 123-33.

The state court entered a written order denying Petitioner's motion to suppress. The court found that Petitioner:

> [W]as not in an adversarial, custodial setting when he was questioned and thus *Miranda* warnings were not required or necessary. The investigating officer had received competing accounts of what had happened between defendant and the complaining witness and was gathering information to resolve those conflicts . . . Defendant was not arrested until three days later on May 28, 2010, after further investigation ensued and conflicts in those accounts were resolved. The fact defendant may have inculpated himself during this interview did not require the intervening officer to stop and give defendant *Miranda* warnings.

ECF No. 18-1 at 188-89.

The court discussed *Mincey v. Arizona*, 437 U.S. 385 (1978) and *DeConingh v. State,* 433 So.2d 501 (Fla. 1983), finding that those cases did not create a *per se* rule that "all interviews conducted of a hospitalized subject and inculpatory admissions obtained therefrom are rendered involuntary." The court observed that those cases were "fact precise" and distinguishable from Petitioner's case. In Petitioner's case, the court found that more than 24 hours had elapsed since his surgery and the narcotic medication he was receiving was "of minimal dosage". The court found that Gore had been assured by a nurse that Petitioner was alert and capable of speaking. The court listened to the recording of Petitioner's interview, which revealed "defendant was intubated and had difficulty speaking clearly but it also discloses he was responsive to questions and speaking freely and logically." The court concluded that:

> There is no affirmative evidence in this record that rises to the level of the oppressive conditions found present in *Mincey, supra,* to render defendant's statements involuntary as a matter of law. This court is satisfied that the voluntariness of defendant's statement has been proven by a preponderance of the evidence and passes muster under *Lego v. Twomey,* 404 U.S. 477 (1972). The jury may still weigh the voluntariness of defendant's statements on its own.

*Id.* at 189.

On this record, Petitioner has not demonstrated that the state court's rejection of this claim, as affirmed by the First DCA, was contrary to, or involved an unreasonable application of clearly established federal law.

This Court must presume that the trial court's factual findings were correct. Moreover, the trial court held a "full, fair, and adequate hearing" on Petitioner's motions and the record plainly supports the trial court's resolution of the factual issues. *See* § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."); *Mincey v. Head*, 206 F.3d 1106, 1131 (11th Cir. 2000) (noting that the district court was bound by the state court's findings of historical fact because the state court held a "full, fair, and adequate hearing" on the claim and the record supported the state court's findings of fact).

When a suspect is in custody and subject to questioning, procedural safeguards must be employed to protect the suspect's right to be free from self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 444–45 (1966). Prior to questioning, the suspect must be advised that (1) he has a right to remain silent, (2) anything he says can be used against him in a court of law, (3) he has the right to the presence of an attorney, and (4) if he cannot afford an attorney, one will be appointed for him prior to any questioning if he so desires. *Id.* at 444. Absent a valid waiver of these rights, evidence obtained as a result of the interrogation may not be used against the suspect. *Id.*

> *Miranda* warnings are only required, however:
>
> [W]here there has been such a restriction on a person's freedom as to render him "in custody." *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977). To determine whether someone is "in custody," we first look at the "circumstances surrounding the interrogation." *Thompson v. Keohane*, 516 U.S. 99, 112, 116 S.Ct. 457, 465, 133 L.Ed.2d 383 (1995). "Given those circumstances," we then consider whether a "reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." *Id.* The "ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (quotation marks omitted).

*Cordera v. Sec'y, Fla. Dep't of Corr.*, 636 F. App'x 552, 555 (11th Cir. 2016).

As the state court explained, the facts of *Mincey v. Arizona,* upon which Petitioner relies, are highly distinguishable. In *Mincey,* the defendant's interrogation occurred shortly after he arrived at the hospital with serious wounds and in "unbearable" pain. *Mincey,* 437 U.S. at 400. There was evidence that he was confused and unable to think clearly, in a "debilitated and helpless" condition. Moreover, when questioned about the details of the events leading to his wounds Mincey "clearly expressed his wish not to be interrogated," but the officer nevertheless continued to interrogate him and repeatedly ignored further requests to desist. *Id.*

In light of the testimony adduced at the suppression hearing, a reasonable jurist could conclude – as this state court did -- that Petitioner

was not in custody when he was interviewed by Detective Gore at the hospital and that, unlike *Mincey,* his statements were voluntary. Although there was conflicting testimony regarding the role of the officers who were present in the hospital, the state court's resolution of the conflict (plainly based on Gore's testimony) is reasonable on this record. The evidence does not support a conclusion that Petitioner was subjected to a "restraint on freedom of movement of the degree associated with a formal arrest." *Beheler*, 463 U.S. at 1125. Petitioner now claims that he was restrained in his hospital bed with arm restraints, but no such evidence was presented to the state court during the suppression hearing and this Court must confine its review to the record before the state court. *See Cullen v. Pinholster,* 563 U.S. 170, 181 (2011) ("review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits"); *Reaves v. Sec'y, Florida Dept. of Corr.*, 872 F.3d 1137, 1153 (11th Cir. 2017) (district court should confine itself to the state court record that existed at the time of the state court review).

Further, although Petitioner alleges that his statement was not voluntary due to intoxication from pain medication he points to no clear and convincing evidence in the record that contradicts the state court's contrary finding. The court's finding was based on its evaluation of the witnesses' testimony, the medical records, and listening to Petitioner's recorded

statement, and this court presumes that finding is correct in the absence of clear and convincing evidence that supports Petitioner's claim.  The trial transcript of the recording of Petitioner's statement does not reflect that Petitioner had any difficulty recalling or describing the events surrounding the stabbing, or that his capacity to converse with Gore was impaired in any way apart from some difficulty in speaking due to the nasopharyngeal tube.  *See* ECF No. 81-9 at 123-34.

On this record, Petitioner has not shown that the state court's decision was contrary to or involved an unreasonable application of clearly established federal law or was an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(1) & (2).   Petitioner is therefore not entitled to federal habeas relief.

## IV.  Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

## V. Conclusion

For the foregoing reasons it is respectfully **RECOMMENDED** that the Petition for Writ of Habeas Corpus, ECF No. 1, should be **DENIED**, and that a certificate of appealability should be **DENIED**.

**IN CHAMBERS** this 13th day of January 2020.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## **NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.